1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9  SYLEE CASTLE, | Case No. 2:21-cv-01994-JVS (MAR) |
| 10            Plaintiff, | |
| 11    v. | |
| 12  A. SERRANO, et al., | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| 13            Defendants. | |

14

15        This Report and Recommendation is submitted to the Honorable James V.

16   Selna, United States United States District Judge, pursuant to 28 U.S.C. § 636 and

17   General Order 05-07 of the United States District Court for the Central District of

18   California.

19                                    **I.**

20                   **SUMMARY OF RECOMMENDATION**

21        Plaintiff Sylee Castle ("Plaintiff") has filed a complaint under 42 U.S.C. § 1983

22   ("Complaint") against the following defendants in their individual capacities: A.

23   Serrano ("Serrano"), A. Lugo ("Lugo"), and J. Coleman ("Coleman").  ECF Docket

24   No. ("Dkt.") 1 at 7.  The Complaint raises five (5) claims under the First and Eighth

25   Amendments.  Id. at 9.  Defendants Lugo and Coleman have filed a Motion to

26   Dismiss ("Motion") Claims One, Four, and Five.  Dkt. 31.

27

28

1   For the reasons set forth below, the Court recommends: (1) **GRANTING** the

2   Motion to Dismiss as to Claim One against Lugo and Claim Five against Coleman;

3   and (2) **DENYING** the Motion to Dismiss as to Claim Four against Coleman.

4                                   **II.**

5                            <u>**BACKGROUND**</u>

6   **A.     FEBRUARY 3, 2019 INCIDENT**

7       Plaintiff alleges as follows: [1]

8       On February 3, 2019, Defendant Serrano said, "Asshole Castle" to Plaintiff

9   while he was being wheelchaired out of the dining hall; in response, the person

10  pushing Plaintiff stepped out of line to be searched.  Dkt. 1 at 9.  Defendant Serrano

11  asked Plaintiff, "why are you always snitching on staff by writing 602s/Grievance

12  Complaints and filing lawsuits."  <u>Id.</u>  Plaintiff did not respond, but Defendant Serrano

13  continued, "lets go to medical so I can strip search your cripple ass."  <u>Id.</u>  In the

14  medical facility, Defendant Serrano ordered Plaintiff to take off his clothing and "to

15  stand up, bend over and spread your butt cheeks and cough."  <u>Id.</u>  Plaintiff informed

16  Defendant Serrano that he had trouble standing up.  <u>Id.</u>  Defendant Serrano then

17  handcuffed Plaintiff, threw him on the ground, and put his knee on Plaintiff's neck

18  while Plaintiff "pleaded with Defendant Coleman to help me which he turned a blind

19  eye."  <u>Id.</u> at 11.  Defendant Serrano stated, "[m]e and Lieutenant Lugo is fed up with

20  you, I'm warning you to stop that bullshit writing up staff."  <u>Id.</u>  Defendant Serrano

21  put his knee on the left side of Plaintiff's face and rubbed a baton in between

22  Plaintiff's butt cheeks while stating, "I should stick it in your ass you fucking convict

23  … The next time I hear about you writing up another officer I'm going to write your

24  ass 115 Rule Violation Report for assaulting me by running over my feet with your

25  wheelchair."  <u>Id.</u>

26

27  _____

28  [1] Plaintiff's hand-written Complaint is difficult to read at certain points.  Where it is unclear, the
Court sets out what it believes Plaintiff to be alleging.

1    Plaintiff alleges that Defendant Coleman "failed to intervene and accurately and

2  promptly report" the alleged assault.  Id.  Plaintiff further alleges that Defendant Lugo

3  "set into motion a series of actions in which subjected Plaintiff to suffer the retaliation

4  actions by Defendant Serrano and Putative Defendant Coleman on 2/3/2019" and

5  had a duty to "oversee, train, and instruct his subordinate[s]." Id. at 15–16.  Plaintiff

6  notes "when [prison officials resort] to the use of force on prisoners a rules violation

7  report as well as incident and medical report must be lodge[d]," but that these reports

8  were not lodged "in the case against Plaintiff on 2/3/2019." Id.  Plaintiff alleges that

9  Defendant Lugo had Defendants Serrano and Coleman "intimidate and coerce

10  Plaintiff from seeking petition for access with the courts of Plaintiff conditions in

11  prison…" Id.  Finally, Plaintiff alleges that Defendant Lugo was indifferent to

12  Plaintiff's serious medical conditions and Plaintiff's right to petition the courts "by his

13  acts setting into motion the actions of his subordinates and intentional cover-up by no

14  rule violation report being issued to Plaintiff." Id.

15  **B.    GRIEVANCES AND APPEALS**

16    In Plaintiff's Complaint, he admitted that a grievance procedure was available

17  at the institution where the events occurred, but alleged that he completed the

18  grievance procedure.  Dkt. 1 at 6.  Plaintiff attached to his Complaint the CDCR

19  Form 602 ("Inmate Appeal"), as well as the Second and Third Level Responses to the

20  Inmate Appeal.  Id. at 30–33.

21    Plaintiff's Inmate Appeal only refers to Defendant Serrano and "the other

22  black officer." Id. at 30, 32.  In contrast, Plaintiff's Complaint mentions both

23  Defendant Lugo and Defendant Coleman by name, in addition to Defendant Serrano.

24  Id. at 11.  Plaintiff's only reference to Defendant Lugo on his grievance forms is in a

25  section explaining why Plaintiff was dissatisfied with the Second Level Responses;

26  Plaintiff states that the only way Defendant Serrano would know about Plaintiff's

27  pending lawsuit against Defendant Lugo is if Defendant Lugo informed Defendant

28  Serrano of it.  Id. at 31, 33.  Plaintiff also wrote that Defendant Lugo has close

1  personal ties with officers.  Id.  Because this section is an explanation of Plaintiff's

2  dissatisfaction with the Second Level Response, it was obviously submitted after filing

3  the initial Inmate Appeal.  Id.

4       On July 25, 2019, Plaintiff's Third Level response was denied.  Id. at 31.

5  **C.    THE INSTANT COMPLAINT**

6      **1.    Claims**

7       On February 24, 2021, Plaintiff constructively filed[2] the Instant Complaint.

8  Dkt. 1 at 25.  Plaintiff brings five (5) claims:

9      (1) Defendants Serrano and Lugo retaliated against Plaintiff for exercising his

10        First Amendment Right to "seek petition for redress" ("Claim One");

11      (2) Defendant Serrano violated Plaintiff's Eighth Amendment Rights by "using

12        unreasonable and unnecessary…force on Plaintiff that caused him pain"

13        ("Claim Two");

14      (3) Defendant Serrano sexually assaulted Plaintiff in violation of the Eighth

15        Amendment ("Claim Three");

16      (4) Defendant Coleman violated Plaintiff's Eighth Amendment Rights by

17        "failing to intervene when Plaintiff was attacked" and sexually assaulted by

18        Defendant Serrano ("Claim Four"); and

19      (5) Defendant Coleman violated Plaintiff's Eighth Amendment Rights by

20        failing to report the February 3, 2019 incident to his superiors ("Claim

21        Five").

22  Id. at 12–22.

23      **2.    Relief sought**

24       Plaintiff seeks an award for compensatory damages in the amount of $300,000,

25  punitive damages in the amount of $350,000, and court costs.  Dkt. 1 at 25.

26  _____

27  [2] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed.  Roberts v.

28  Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits filed by pro se prisoners").

1    **D.    MOTION TO DISMISS**

2         On March 18, 2022, Defendant's Counsel filed a Motion to Dismiss.  Dkt. 31.

3    The Motion asserts the following three arguments:

4              (1) Plaintiff failed to exhaust the available administrative remedies against

5                  Defendants Lugo and Coleman;

6              (2) Plaintiff failed to allege facts to support his conclusory allegations for

7                  retaliation against Defendant Lugo; and

8              (3) Plaintiff's allegations against Defendant Coleman failed to state a claim;

9    Dkt. 31 at 10–15.  On May 11, 2022, Plaintiff filed an Opposition to Defendant's

10   Motion.  Dkt. 39.  On June 15, 2022, Defendants filed a Reply.  Dkt. 40.  Thus, the

11   matter stands submitted.

12                                    **III.**

13                                 **DISCUSSION**

14   **A.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

15        **1.    Applicable law**

16        The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a),

17   requires a prisoner to exhaust all available administrative remedies before suing over

18   prison conditions in federal court.  Booth v. Churner, 532 U.S. 731, 733–34 (2001);

19   see also 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such

20   administrative remedies as are available are exhausted.").  "[F]ederal courts may not

21   consider a prisoner's civil rights claim when a remedy was not sought first in an

22   available administrative grievance procedure."  Panaro v. City of North Las Vegas,

23   432 F.3d 949, 954 (9th Cir. 2005).  A prisoner must pursue a remedy through all levels

24   of the prison's grievance process "as long as some action can be ordered in response

25   to the complaint," Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005), regardless of

26   the ultimate relief offered through such procedures.[3]  Booth, 532 U.S. at 741.

27   _____

28   [3]To exhaust administrative remedies, a California state prisoner must generally complete a three-
     level appeals process.  See Cal. Code Regs., tit. 15, §§ 3480–3487; see also Smith v. Daguio, 2020 WL

                                        5

1       "The level of detail necessary in a grievance to comply with the grievance

2 procedures will vary from system to system and claim to claim, but it is the prison's

3 requirements, and not the PLRA, that define the boundaries of proper exhaustion."

4 Jones v. Bock, 549 U.S. 199, 218 (2007).  When a prison's internal procedures do not

5 specify the level of factual specificity a prisoner must raise to exhaust, the default rule

6 is that "a grievance suffices if it alerts the prison to the nature of the wrong for which

7 redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)

8 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).

9       Under the PLRA, failure to exhaust is an affirmative defense.  Jones, 549 U.S.

10 at 216.  Thus, "inmates are not required to specially plead or demonstrate exhaustion

11 in their complaints." Id.  Rather, the issue of non-exhaustion is properly raised in a

12 motion for summary judgment.  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014)

13 (en banc).  However, "[i]n the rare event that a failure to exhaust is clear on the face

14 of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Id. at

15 1166.  "Otherwise, defendants must produce evidence proving failure to exhaust in

16 order to carry their burden."  Id. (finding plaintiff was excused from any obligation to

17 exhaust under Section 1997e(a) because defendants failed to prove administrative

18 remedies were available at the jail where plaintiff was confined); see also Aquilar–

19 Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007) ("[O]nly in rare cases will a

20 district court be able to conclude from the face of the complaint that a prisoner has

21 not exhausted his administrative remedies and that he is without a valid excuse.").

22       While exhaustion is normally a precondition to suit, the PLRA does not require

23 exhaustion "when circumstances render administrative remedies 'effectively

24 unavailable.'" Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010).  Courts in the

25 Ninth Circuit generally require inmates to make a good faith effort to exhaust a

26 prison's administrative remedies before the remedies may be deemed effectively

27 

28 7773609, at *4 n.4 (N.D. Cal. Dec. 30, 2020) (regulations governing CDCR grievance process were amended effective June 1, 2020, and renumbered at §§ 3480–3487).

1   unavailable.  See id. at 823–24 (to fall within an exception to exhaustion requirement,

2   "a prisoner must show that he attempted to exhaust his administrative remedies but

3   was thwarted").

4       **2.    Analysis**

5           **a.    Defendant Lugo**

6       Plaintiff failed to properly exhaust available administrative remedies against

7   Defendant Lugo.  Plaintiff admits in the instant Complaint that there was a grievance

8   procedure available, and argues he completed the three-step appeals process required

9   by California state prisoners.  Dkt. 1 at 6.  Plaintiff's grievance passed through all

10  appeal levels within the prison system and, in his Third Level Appeal Decision, the

11  Office of Appeals confirmed that their decision "exhausts the administrative remedy

12  available to the appellant within CDCR."  Id. at 27.  Defendants do not dispute this.

13      However, Defendants argue that, unlike the Complaint, Plaintiff's Inmate

14  Appeal did not allege a claim against Defendant Lugo, and therefore Plaintiff failed

15  "to exhaust the administrative remedies that were available to put CDCR on notice

16  that Plaintiff was claiming Defendant Lugo participated in the alleged retaliation by

17  Officer Serrano."  Dkt. 31 at 12–13.

18      As an initial matter, while exhaustion of administrative remedies is typically an

19  affirmative defense properly brought in a motion for summary judgment, here it is

20  appropriate for Defendant to move for dismissal under Rule 12(b)(6) because

21  Plaintiff's Inmate Appeal forms are attached to Plaintiff's Complaint, and thus

22  Plaintiff's failure to exhaust is clear on the face of the complaint.  See, e.g., Williams v.

23  Talley, No. 2:19-CV-10502-GW (SK), 2021 WL 6752009, at *4 (C.D. Cal. Nov. 18,

24  2021), report and recommendation adopted sub nom. ROBERT CURTIS

25  WILLIAMS, III, Plaintiff, v. UNKNOWN, Defendant. (C.D. Cal. Mar. 8, 2022)

26  (dismissing claim where Plaintiff attached grievance forms to the complaint showing

27  claim had not been exhausted).

28

1    Defendants are correct that Plaintiff failed to exhaust the available

2  administrative remedies with respect to his claim against Defendant Lugo because

3  Plaintiff's original Inmate Appeal did not include Plaintiff's retaliation claim against

4  Lugo.  Because Plaintiff mentions Defendant Lugo for the first time after receiving

5  the Second Level Response, but not at all in Plaintiff's original Inmate Appeal,

6  Plaintiff's allegations against Defendant Lugo were not properly exhausted as required

7  by law.  42 U.S.C. § 1997e(a); Cal. Code Regs. tit. 15, § 3084.1(b) (2019).  In fact, the

8  Third Level Response did not address Plaintiff's allegations against Lugo, noting

9  Plaintiff had "added new issues and requests to the appeal…and it is not appropriate

10  to expand the appeal beyond the initial problem…" Dkts. 1 at 27; 40 at 2.  Thus,

11  Plaintiff did not exhaust the available administrative remedies with respect to

12  Defendant Lugo.  See Smith v. Daguio, No. 18-06378 BLF (PR), 2020 WL 7773609,

13  at *6–7 (N.D. Cal., 2020) (finding administrative remedies had not been exhausted

14  with respect to claims not addressed by the third level appeal decision because they

15  were added after the original grievance).

16    In any case, as discussed below, even if Plaintiff had exhausted his claim against

17  Defendant Lugo, it would still be subject to dismissal for failure to state a claim.  See

18  below, subsection III.B.2.

19                    **b.    Defendant Coleman**

20    Plaintiff properly exhausted available administrative remedies against

21  Defendant Coleman.  As noted above, Defendants do not dispute that Plaintiff's

22  grievance passed through all appeal levels within the prison system or that, in his

23  Third Level Appeal Decision, the Office of Appeals confirmed that their decision

24  "exhausts the administrative remedy available to the appellant within CDCR." Dkt. 1

25  at 27.

26    Rather, Defendants argue that Plaintiff failed to exhaust his allegations against

27  Defendant Coleman because Plaintiff did not mention Defendant Coleman in

28  Paragraph B of the Inmate Appeal, where inmates are required to state the action

1    requested by their appeal.  Dkt. 31 at 12.  Defendants argue that Plaintiff failed to
2    mention the alleged wrongdoing by Defendant Coleman, and therefore that
3    "[p]laintiff did not place the institution on notice that he was alleging a failure to
4    intervene by a passing reference to another officer when no other information or
5    complaint against the officer is stated in the Inmate Appeal."  Id.; Dkt. 40 at 1–2.  The
6    Court assumes this "passing reference to another officer" is Plaintiff's allegation in the
7    original Inmate Appeal that "the other black officer … turned a blind eye" when
8    Defendant Serrano assaulted Plaintiff.  Dkt. 1 at 32.

9         The Court finds that Plaintiff has exhausted available administrative remedies
10   against Defendant Coleman because the original Inmate Appeal satisfied the CDCR's
11   procedure and achieved the purposes of the PLRA's exhaustion requirement.
12   CDCR's Inmate Appeal form asked Plaintiff to "state briefly the subject of your
13   appeal," to "explain your issue," and to declare the "action requested."  Dkt. 1 at 30.
14   The form did not require identification of any specific persons.  Id.  Indeed, prisoners
15   may not always know the specific name of involved officers at the time they first file a
16   grievance.  Plaintiff did, however, fully detail the date, time, and facts of the incident.
17   Id.  Furthermore, liberally construed, Plaintiff's allegations against "the other black
18   officer" during the alleged assault by Officer Serrano implied the claim that
19   Defendant Coleman failed to intervene; these allegations are substantially similar to
20   those in the Complaint that Plaintiff called out for help during the alleged assault and
21   Defendant Coleman did nothing.  Dkt. 1 at 32; see also Griffin v. Arpaio, 557 F.3d at
22   1120 (noting a grievance need not include legal terminology or legal theories unless
23   they are in some way needed to provide notice of the harm being grieved).

24        Importantly, it is clear the CDCR was sufficiently put on notice of Defendant
25   Coleman's possible involvement because Defendant Coleman was one of two officers
26   (aside from Officer Serrano) interviewed as a part of an Appeal Inquiry following the
27   Second Level Appeal.  Dkt. 1 at 28.  The institution was therefore obviously alerted to
28   the "nature of the wrong for which redress is sought" and, with such notice, were

1  given the opportunity to address the complaint internally.  Thus, Plaintiff properly

2  exhausted the available administrative remedies regarding his allegations against

3  Defendant Coleman.

4  **B.      FAILURE TO STATE A CLAIM**

5           **1.      Rule 12(b)(6) standard of review**

6           Under Rule 12(b)(6), a party may move to dismiss a pleading for "failure to

7  state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A claim

8  should be dismissed under Rule 12(b)(6) if the plaintiff fails to proffer "enough facts

9  to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly,

10  550 U.S. 544, 570 (U.S., 2007).  "A claim has facial plausibility when the plaintiff

11  pleads factual content that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

13  (2009).

14           Although the plaintiff must provide "more than labels and conclusions,"

15  Twombly, 550 U.S. at 555, "[s]pecific facts are not necessary; the [complaint] need

16  only give the defendant[s] fair notice of what the . . . claim is and the grounds upon

17  which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and

18  quotation marks omitted).

19           In considering whether a complaint states a claim, a court must accept as true

20  all of the material factual allegations in it.  Hamilton v. Brown, 630 F.3d 889, 892–93

21  (9th Cir. 2011).  However, a court need not accept as true "allegations that are merely

22  conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re

23  Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  The court must also

24  construe the pleading in the light most favorable to the pleading party and resolve all

25  doubts in the pleader's favor.  See, e.g., Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir.

26  2005).  Pro se pleadings are "to be liberally construed" and are held to a less stringent

27  standard than those drafted by a lawyer.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir.

28  2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not

1    alter courts' treatment of pro se filings; accordingly, we continue to construe pro se

2    filings liberally when evaluating them under Iqbal.").

3           **2.     First Amendment retaliation**

4                  **a.     Applicable law**

5           "To state a First Amendment retaliation claim, a plaintiff must plausibly allege

6    that (1) he was engaged in a constitutionally protected activity, (2) the defendant's

7    actions would chill a person of ordinary firmness from continuing to engage in the

8    protected activity and (3) the protected activity was a substantial or motivating factor

9    in the defendant's conduct." Capp v. Cty. of San Diego, 940 F.3d 1046, 1053 (9th

10   Cir. 2019) (internal quotation marks omitted) (internal citations omitted).

11          Retaliation against prisoners for exercise of their right to file prison grievances

12   is itself a constitutional violation and prohibited as a matter of "clearly established

13   law." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes v.

14   Robinson, 408 F.3d 559, 566 (9th Cir. 2005)).  Oral threats to file grievances, as

15   opposed to actually filing grievances, are also protected, and that law is clearly

16   established as of 2012, at the latest.  See Gleason v. Placencia, No. 1:19-CV-00539-

17   LJOE-PGPC, 2020 WL 104693 at *4–6 (E.D. Cal. Jan. 9, 2020), report and

18   recommendation adopted, No. 1:19-CV-00539-LJOE-PGPC, 2020 WL 3497001

19   (E.D. Cal. June 29, 2020) (citing Entler v. Gregoire, 872 F.3d 1031, 1039–43 (9th Cir.

20   2017)).

21          Furthermore, to state a First Amendment retaliation claim, Plaintiffs do not

22   need to show their "speech was actually inhibited or suppressed." Lacey v. Maricopa

23   Cty., 693 F.3d 896, 916 (9th Cir. 2012) (quoting Mendocino Envtl. Ctr. v. Mendocino

24   Cty., 192 F.3d 1283, 1300 (9th Cir. 1999)) (internal quotation marks omitted).  Rather,

25   courts look to "whether an officials' acts would chill or silence a person of ordinary

26   firmness from future First Amendment activities." Id. at 916–17.

27          However, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege an

28   actual connection or link between the actions of the named defendants and the

1 alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo

2 v. Goode, 423 U.S. 362 (1976).  Accordingly, there is no respondeat superior liability

3 under Section 1983.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor

4 is only liable for constitutional violations of his subordinates if the supervisor

5 participated in or directed the violations, or knew of the violations and failed to act to

6 prevent them.  Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-

7 81 (9th Cir. 1984).

8        **b.**    **Analysis**

9       Plaintiff brings a retaliation claim against Defendant Lugo.  Dkt. 1 at 12.

10 Although Plaintiff has not alleged that Defendant Lugo was not directly involved in

11 the February 3, 2019 incident, Plaintiff alleges that Defendant Lugo "set into motion a

12 series of actions" which subjected Plaintiff to suffer retaliatory acts by Defendant

13 Serrano and Defendant Coleman.  Id. at 15.  Plaintiff alleged that Defendant Lugo

14 had a duty to oversee and train his subordinates and that the absence of a rule's

15 violation report following the February 3, 2019 incident was an "intentional cover-up"

16 by Defendant Lugo.  Id. at 16.  Liberally construed, Plaintiff appears to allege

17 Defendant Lugo retaliated against Plaintiff for filing complaints by directing his

18 subordinates to intimidate and coerce Plaintiff.  Id. at 16.

19       However, Plaintiff has failed to allege facts to support the theory that

20 Defendant Lugo directed his subordinates to retaliate against him on February 3,

21 2019.  Plaintiff alleged that Defendant Serrano stated he and Lugo were "fed up" with

22 Plaintiff "writing up staff."  Dkt. 1 at 14–15.  Serrano's statement does not indicate

23 Lugo directed Serrano to harass Plaintiff, or even that Lugo was, at any point, aware

24 of Serrano's actions on February 3, 2019.  Indeed, Plaintiff does not allege any other

25 facts that would suggest that Lugo either directed Serrano to retaliate against Plaintiff,

26 or knew of the potential retaliation and failed to intervene.

27       In Plaintiff's Opposition, appears to allege that the previous grievances and

28 lawsuits Plaintiff filed in 2017–2018 against Defendant Lugo were "the motivating

factors" behind Defendant Lugo "setting into motion" the retaliatory acts on

February 3, 2019.  Dkt. 39 at 8.  In a previous grievance, Plaintiff stated that Lugo

filed a report against Plaintiff to teach him "a lesson about writing up staff."  Id. at

23–24.   Still, without additional facts, Plaintiff's assertions that Defendant Lugo "set

into motion" the retaliatory actions of his subordinates and failed to file a rules

violation report as "an intentional cover-up" are too speculative to state a plausible

claim for retaliation against Defendant Lugo.  Even accepting all of Plaintiff's

allegations as true, Plaintiff has failed to allege facts showing that Defendant Lugo

personally participated in thealleged retaliation, directed his subordinates to retaliate

against Plaintiff, or knew of any retaliatory acts and failed to prevent them.

Furthermore, Defendant Lugo cannot be held liable under a theory of respondeat

superior simply because he was a supervisor.  See Taylor v. List, 880 F.2d 1040, 1045

(9th Cir. 1989).  Therefore, Plaintiff has failed to state a retaliation claim against

Defendant Lugo.

> ## 2. Eighth Amendment
> ### a. Applicable law
> #### i. Excessive force

The Eighth Amendment prohibits the use of excessive physical force against

inmates.  Farmer v. Brennan, 511 U.S. 835, 832.  To prevail on an excessive force

claim under the Eighth Amendment, a plaintiff must prove the "unnecessary and

wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319–20 (1986).  The

"core judicial inquiry" is whether prison officials applied force "maliciously and

sadistically to cause harm," or whether they applied force "in a good-faith effort to

maintain or restore discipline."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citations

omitted).  Courts in the Ninth Circuit have placed prisoner sexual assault claims

within the same legal framework as excessive force claims.  See Wood v. Beauclair,

692 F.3d 1041, 1051 (9th Cir. 2012); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th

Cir. 2000).

1             **ii.    Failure to intervene**

2      Prison officials have a duty to take reasonable steps to protect inmates from

3 physical abuse. <u>Farmer</u>, 511 U.S. at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th

4 Cir. 2005).  A prisoner's rights can be violated by a prison official's deliberate

5 indifference by failing to intervene.  <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir.

6 1995).  Deliberate indifference occurs where prison officials know of and disregard a

7 substantial risk of serious harm to the plaintiff.  <u>Farmer</u>, 511 U.S. at 847; <u>Hearns</u>, 413

8 F.3d at 1040.  However, an officer can only be held liable for failing to intercede if he

9 had a realistic opportunity to intercede and failed to do so.  <u>Cunningham v. Gates</u>,

10 229 F.3d 1271, 1289-90 (9th Cir. 2000).

11         **b.    Analysis**

12             **i.    Defendant Serrano (excessive force)**

13      Defendants do not argue Plaintiff has failed to state Eighth Amendment

14 excessive force and sexual assault claims against Defendant Serrano, but it is relevant

15 here because Plaintiff alleges that Coleman was present during these constitutional

16 violations incident and failed to intervene.  <u>See Robins</u>, 60 F.3d at 1436 (holding

17 prison officials violated a prisoner's Eighth Amendment rights by failing to intervene

18 when officer used excessive force).

19      Plaintiff alleges that on February 3, 2019, Defendant Serrano chose Plaintiff to

20 be searched while Plaintiff was being wheelchaired out of the dining hall, while asking

21 Plaintiff why he was "always snitching on staff" by filing grievances. Dkt. 1 at 18.

22 Defendant Serrano handcuffed Plaintiff while in his wheelchair, threw him to the

23 ground, and "rubbed his baton in between Plaintiff's butt cheeks." <u>Id.</u>  The actions of

24 Defendant Serrano have caused Plaintiff to suffer mentally and physically.  <u>Id.</u> at 19.

25 Plaintiff suffered a spinal cord injury between C6 and C7.  <u>Id.</u>  Plaintiff's injuries

26 required prescribed medication such as Baclofen for muscle spasms and Gabapentin

27 for neuropathic pain.  <u>Id.</u>

28

1    These allegations are sufficient to state an excessive force claim against

2  Defendant Serrano.  It does not appear that Defendant Serrano was acting under any

3  threat or risk of harm to other inmates or prison guards.  Indeed, Defendant Serrano's

4  use of force when slamming Plaintiff to the ground, kneeling on his neck, and sexually

5  abusing him is not proportional to any threat Defendant Serrano possibly perceived

6  from a wheelchair-bound inmate—particularly where Defendant Serrano's actions

7  resulted in serious spinal injury to Plaintiff. Id. at 19.  Furthermore, following the

8  incident, Defendant Serrano stated, "[n]ext time I hear about you writing up another

9  officer I'm going to write your ass a 115 Rule Violation Report for assaulting me by

10  running over my feet with your wheelchair." Id. at 18.  It can be inferred from his

11  statement that Serrano was likely not applying force in a good-faith effort to maintain

12  discipline.  These allegations, taken as true, raise the inference of sadistic or malicious

13  intent. See Whitley, 475 U.S. at 321 ("inferences may be drawn as to whether the use

14  of force could plausibly have been thought necessary, or instead evinced such

15  wantonness with respect to the unjustified infliction of harm as is tantamount to a

16  knowing willingness that it occurs").  Thus, Plaintiff has stated an Eighth Amendment

17  excessive force claim against Defendant Serrano.

18    To the extent Plaintiff brings a separate claim against Serrano for sexual assault,

19  he has stated a claim.  Sexual contact between a prison guard and a prisoner serves no

20  legitimate role. Wood, 692 F.3d at 1050.  Plaintiff has alleged that Defendant Serrano

21  "rubbed his baton between [his] butt cheeks" during a naked body search. Id. at 18.

22  Plaintiff further alleged that Defendant Serrano stated, "I should stick it in your ass

23  you fucking convict." Id. at 23.  Where there is no legitimate penological purpose for

24  a prison official's conduct, courts have "presum[ed] malicious and sadistic intent."

25  Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir.1999) (quoting Wood,

26  692 F.3d at 1050).  Thus, Plaintiff has stated an Eighth Amendment sexual assault

27  claim against Defendant Serrano.

28  ///

| | |
|---|---|
| 1 | ii.    **Defendant Coleman (failure to intervene)** |
| 2 | Plaintiff brings a failure to intervene claim and failure to report claim under the |
| 3 | Eighth Amendment against Defendant Coleman.  Dkt. 1 at 22.  Plaintiff alleges that |
| 4 | Defendant Coleman was present and failed to intervene when Plaintiff was attacked |
| 5 | and sexually abused by Defendant Serrano.  Id.  Plaintiff alleges he pleaded with |
| 6 | Defendant Coleman to help him while Defendant Coleman "turned a blind eye."  Id. |
| 7 | at 23.  Plaintiff further alleges that Defendant Coleman failed to file a report to his |
| 8 | supervisors.  Id. at 11. |
| 9 | In Defendant's Motion, Defendant argued that Plaintiff's allegations against |
| 10 | Defendant Coleman fail to state a claim because "[p]laintiff's vague and conclusory |
| 11 | statement that Defendant Coleman turned a blind eye does not meet the requirements |
| 12 | of Federal Rule of Civil Procedure 8(a)(2)."  Dkt. 31 at 14.  While it is not entirely |
| 13 | clear, liberally construed, Plaintiff alleges that Defendant Coleman failed to intervene |
| 14 | when Plaintiff pleaded for his help during the attack by Defendant Serrano which |
| 15 | resulted in Plaintiff's spinal injury.  See Byrd v. Phoenix Police Dep't, 885 F.3d 639, |
| 16 | 642 (9th Cir. 2018) (finding that pro se litigant's allegations were sufficient where |
| 17 | plaintiff's "use of a colloquial, shorthand phrase" made it clear what plaintiff was |
| 18 | alleging). |
| 19 | Because Plaintiff has sufficiently pleaded claims for excessive force and sexual |
| 20 | assault for an incident where Defendant Coleman was present, it follows that he has |
| 21 | also stated a claim against Defendant Coleman for failure to intervene if Defendant |
| 22 | Coleman was in a position where he had a reasonable opportunity to prevent the |
| 23 | attack from occurring and was aware that Plaintiff's constitutional rights were being |
| 24 | violated.  See Carson v. Martinez, No. 16-CV-1736-JLS (BLM), 2017 WL 2212030, at |
| 25 | *10 (S.D. Cal. May 18, 2017), report and recommendation adopted as modified, No. |
| 26 | 3:16-CV-1736-JLS (BLM), 2017 WL 3315957 (S.D. Cal. Aug. 3, 2017) (explaining |
| 27 | that, to determine whether the defendant was liable for physically stopping an assault, |
| 28 | he "'must have been in a position where he had a reasonable opportunity to prevent |

1   the attack from occurring' and must have been aware that Plaintiff's constitutional

2   rights were being violated").

3       Plaintiff alleges he "screamed out loud in pain" and pleaded for help during the

4   alleged attack. This allegation gives rise to the reasonable interference that Defendant

5   Coleman knew Plaintiff was facing a substantial risk of serious harm.  As discussed

6   above, accepting Plaintiff's allegations as true, the circumstances made clear that

7   Defendant Serrano was not applying force for any legitimate, penological purpose.

8   Because Coleman was present and alerted to Serrano's clearly malicious assault, it can

9   be inferred that Defendant Coleman had the opportunity to intervene to prevent

10  further harm to Plaintiff before Defendant Serrano proceeded to place his knee on

11  Plaintiff's face and sexually abuse him.  Defendant Coleman decision to turn away and

12  do nothing when Plaintiff cried out to him for help as he was being assaulted

13  demonstrates deliberate indifference.  At the pleading stage, Plaintiff's allegations are

14  sufficient to state a claim for failure to intervene in violation of the Eighth

15  Amendment.

16              **iii.    Defendant Coleman (failure to report)**

17      However, Defendants correctly argue that the claims against Defendant

18  Coleman for failure to report in violation of the Eighth Amendment should be

19  dismissed because "[f]ailing to report an incident that has already taken place, without

20  more, does not constitute a disregard for an excessive risk to inmate health or safety."

21  Dkt. 31 at 15 ((quoting Harbor v. Cherniss, No. 2:15-CV-0705-AC (P), 2016 WL

22  1587240 at *3 (Cal. E.D. April 20, 2016)).  Failure to report an incident, alone, is not a

23  constitutional violation "absent facts showing that by failing to report the incident,

24  defendants knowingly disregarded an excessive risk to the plaintiff's health or safety."

25  Harbor, 2016 WL 1587240 at *3.  To the extent that Plaintiff's claim is based on

26  Defendant Coleman's failure to follow a prescribed policy of "accurately and

27  promptly" reporting such incidents to supervisors, this fails to establish a

28  constitutional violation.  See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009)

("[S]tate departmental regulations do not establish a federal constitutional violation."); see also Bennett v. Ponce, No. CV 18-4996 VBF (AS), 2020 WL 3052508, at *7 n.10 (C.D. Cal. Apr. 7, 2020), report and recommendation adopted, No. LACV1804996VBFAS, 2020 WL 3051785 (C.D. Cal. June 5, 2020) ("[F]ailure to adhere to administrative regulations does not equate to a constitutional violation") (quoting Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)).  Thus, Plaintiff has failed to state a "failure to report" claim in violation of the Eighth Amendment.

**IV.**

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the Court issue an Order:

(1) accepting this Report and Recommendation;

(2) **GRANTING** Defendants' Motion to Dismiss with respect to Claim One against Lugo;

(3) **GRANTING** Defendants' Motion to Dismiss with respect to Claim Five against Coleman;

(4) **DENYING** Defendants' Motion to Dismiss with respect to Claim Four against Coleman; and

(5) **TERMINATING** Lugo as a Defendant.

**IT IS SO ORDERED.**

Dated:  August 09, 2022

_____

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge